UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS OF MICHIGAN,<br><br>　　　Plaintiff,<br><br>v.<br><br>JENNIFER A. ABRUZZO, in her official capacity as GENERAL COUNSEL NATIONAL LABOR RELATIONS BOARD,<br><br>　　　Defendant. | Case No. 23-cv-00277<br><br>Hon. Robert J. Jonker<br><br><br>*** ORAL ARGUMENT REQUESTED |

BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

Keith E. Eastland
Stephen J. van Stempvoort
Brett Swearingen
MILLER JOHNSON
45 Ottawa Ave. SW
Grand Rapids, MI 49503
Telephone: (616) 831-1700
eastlandk@millerjohnson.com
vanstempvoorts@millerjohnson.com
swearingenb@millerjohnson.com

M. E. Buck Dougherty III, *pro hac vice forthcoming*
Jeffrey Jennings, *pro hac vice forthcoming*
Noelle Daniel, *pro hac vice forthcoming*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jjennings@libertyjusticecenter.org
ndaniel@libertyjusticecenter.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 5

LEGAL STANDARD .................................................................................................. 15

ARGUMENT ................................................................................................................ 16

    I.  This Court should grant a preliminary injunction to stop
       Abruzzo from chilling protected speech by threatening to
       prosecute employers for speaking to their employees about
       unionization ....... ......................................................................................... 16

       A.  Plaintiff is likely to prevail on the merits ................................................. 20

           1.  Plaintiff ABC Michigan has Article III standing .................................. 21

           2.  Under Count I, ABC Michigan is likely to prevail on its
              Free Speech claim because Abruzzo's Memorandum
              coerces and compels employers to express certain speech
              to their employees. .............................................................................. 22

           3.  Under Count II, Plaintiff is likely to prevail on its Free
              Speech claim because Abruzzo's Memorandum regulates
              employer speech based on content ....................................................... 24

           4.  Under Count III, Plaintiff is likely to prevail on its Free
              Speech and Due Process claim because Abruzzo's
              Memorandum is unduly vague. ........................................................... 26

           5.  Under Count IV, Plaintiff is like to prevail on its Free
              Speech claim because Abruzzo's Memorandum is a prior
              restraint on employer speech .............................................................. 27

       B.  The remaining preliminary injunction factors favor Plaintiff. ................. 29

           1.  Plaintiff's loss of its First Amendment rights is
              irreparable without an injunction ....................................................... 29

           2.  Issuance of an injunction would not harm Abruzzo
              because she is a recalcitrant official. ................................................... 29

           3.  The public interest is served by issuing an injunction to
              prevent the violation of constitutional rights ..................................... 30

CONCLUSION ............................................................................................................. 30

# TABLE OF AUTHORITIES

## Cases

*Babcock v. Wilcox Co.*,
   77 N.L.R.B. 577 (1948). ................................................................. 2, 10

*Backpage.com, LLC v. Dart*,
   807 F.3d 229 (7th Cir. 2015) ....................................................... 17, 18

*Baggett v. Bullitt*,
   377 U.S. 360 (1964) .......................................................................... 26

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 52 (1963) .................................................................... passim

*Boos v. Berry*,
   485 U.S. 312 (1988) .......................................................................... 25

*Carey v. Brown*,
   447 U.S. 445 (1980) .......................................................................... 25

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*,
   363 F. 3d 427 (6th Cir. 2004) ............................................................ 30

*City of Chicago v. Morales*,
   527 U.S. 41 (1999) ............................................................................ 26

*Clements v. Fashing*,
   457 U.S. 957 (1982) .......................................................................... 21

*Connally v. General Constr. Co.*,
   269 U.S. 385 (1926) .................................................................... 26, 27

*Elrod v. Burns*,
   427 U.S. 347 (1976) .......................................................................... 29

*Freedman v. Maryland*,
   380 U.S. 51 (1965) ............................................................................ 28

*Friendship Materials, Inc. v. Mich. Brick, Inc.*,
   679 F.2d 100 (6th Cir. 1982) ....................................................... 16, 30

*Frisby v. Schultz*,
   487 U.S. 474 (1988) .......................................................................... 23

*Garlock, Inc. v. United Seal Inc.*,
   404 F.2d 256 (6th Cir. 1968) ............................................................ 20

*Hamilton's Bogarts, Inc. v. Michigan*,
   501 F.3d 644 (6th Cir. 2007) ............................................................ 15

*In re Amazon.com Services, Inc. et al.*,
   Case No. 29-CA-280153, National Labor Relations Board, Region 29 ................... 12

iii

*Janus v. AFSCME*,
  138 S. Ct. 2448 (2018) ........................................................................... 23

*Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*,
  172 F.3d 397 (6th Cir. 1999) ................................................................. 21

*Larson v. Domestic & Foreign Commerce Corp.*,
  337 U.S. 682 (1949) ...................................................................... 16, 30

*Lewis* v. *NLRB*,
  357 U.S. 10 (1958) .................................................................................. 6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................. 21

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*,
  945 F.2d 150 (6th Cir. 1991) ............................................................... 15

*NAACP v. Button*,
  371 U.S. 415 (1963) ............................................................................. 26

*Near v. Minnesota*,
  283 U.S. 697 (1931) ............................................................................. 28

*Nebraska Press Ass'n v. Stuart*,
  427 U.S. 539 (1976) ............................................................................. 27

*New York Times Co. v. United States*,
  403 U.S. 713 (1971) ...................................................................... 27, 29

*NLRB v. Food & Commercial Workers Union*,
  484 U.S. 112 (1987) ............................................................................... 6

*Northeast Ohio Coalition for Homeless and Service Employees v. Blackwell*,
  467 F.3d 999 (6th Cir. 2006) ............................................................... 15

*Okwedy v. Molinari*,
  333 F.3d 339 (2d Cir. 2003) ................................................................ 18

*Overstreet v. Lexington-Fayette Urban County Gov't*,
  305 F.3d 566 (6th Cir. 2002) ............................................................... 15

*Perry Educ. Assn. v. Perry Local Educators' Assn.*,
  460 U.S. 37 (1983) ............................................................................... 24

*Police Department of Chicago v. Mosley*,
  408 U.S. 92 (1972) ............................................................................... 24

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992) ...................................................................... 24, 25

*Rowan* v. *Post Office Dept.*,
  397 U.S. 728 (1970) ............................................................................. 23

*Snyder v. Phelps,*
 562 U.S. 443 (2011) ............................................................................. 23

*Southeastern Promotions, Ltd. v. Conrad,*
 420 U.S. 546 (1975) ....................................................................... 28, 29

*Speech First, Inc. v. Schlissel,*
 939 F.3d 756 (6th Cir. 2019) ..................................................... passim

*United States v. Alvarez,* 567 U.S. 709 (2012) ........................................ 24

*Universal Life Church Monastery Storehouse v. Nabors,*
 35 F.4th 1021 (6th Cir. 2022) ...................................................... 16, 30

*Virginia v. Am. Booksellers Ass'n, Inc.,*
 484 U.S. 383 (1988) ............................................................................. 21

*West Virginia Bd. of Ed. v. Barnette,*
 319 U.S. 624 (1943) ..................................................................... 23, 24

*Wooley v. Maryland,*
 430 U.S. 705 (1977) ............................................................................. 23

## Constitutional Provisions

U.S. Const. amend I ................................................................... passim

## Statutes

29 U.S.C. § 151 ............................................................................... 3, 5

29 U.S.C. § 153(d) ................................................................................ 6

29 U.S.C. § 156 ..................................................................................... 6

29 U.S.C. § 158(c) ................................................................................ 5

29 U.S.C. § 160(b) ................................................................................ 7

29 U.S.C. §§ 151-169 ........................................................................... 5

## Rules

Fed. R. Civ. P. 65 ............................................................................ 1, 15

W.D. Mich. LCivR 7.1(a) ..................................................................... 1

W.D. Mich. LCivR 7.2(b) ..................................................................... 1

## Other Authorities

Harold Meyerson, *The Memo Writer,* The American Prospect (Apr. 2022) ................ 1

Robert Iofalla, *Abruzzo's Plan to Overhaul NLRB Precedent Still in Need of Cases,*
 Bloomberg Law (Mar. 1, 2023) ............................................. 2, 11, 13, 14

*The American Heritage Dictionary of the English Language* (5th ed. 2022) ............ 17

Will Duffield, *Jawboning against Speech*: *How Government Bullying Shapes the Rules of Social Media*, Policy Analysis no. 934, Cato Institute, Washington D.C. (Sep. 12, 2022) ......................................................................................................... 19

Plaintiff Associated Builders and Contractors of Michigan seeks a preliminary injunction from this Court pursuant to its motion under Fed. R. Civ. P. 65(a) against Defendant, Jennifer A. Abruzzo, in her official capacity as General Counsel National Labor Relations Board. In support of its motion, ABC Michigan submits the following brief in accordance with W.D. Mich. LCivR 7.1(a) and 7.2(b).

## PRELIMINARY STATEMENT

Since being appointed General Counsel of the National Labor Relations Board in 2021, Jennifer Abruzzo has embarked on a personal campaign to transform federal labor law under the National Labor Relations Act to favor unions, and to disfavor employers. She has done so, not as a legislator enacting laws, but as a *prosecutor*. As chief labor prosecutor, Abruzzo has attempted to overhaul federal labor law, not by using her valid statutory authority to investigate and prosecute cases once unfair labor practice charges are filed, but rather by making public threats in *memos*. Even the media have taken notice of Abruzzo's penchant for writing public memos and have dubbed her "The Memo Writer."[1]

As General Counsel, Abruzzo is not authorized to file a charge alleging an unfair labor practice against an employer or a union; she is *only* authorized to impartially investigate and prosecute once a charge is filed. In recent public remarks reported this month by Bloomberg Law, Abruzzo revealed that, when she became General

---

[1] Harold Meyerson, *The Memo Writer*, The American Prospect (Apr. 2022), *available* at https://prospect.org/labor/memo-writer-jennifer-abruzzo.

1

Counsel, she initially targeted over 50 separate labor issues and precedents that she disfavored and sought to overturn.[2] As reported, Abruzzo continues to cajole unions to file unfair labor practice charges against employers because she "is still lacking cases she can use to challenge certain precedents as part of her campaign to shift federal labor law to benefit workers and unions."[3] The article referenced Abruzzo's use of memos and speeches to publicly identify those precedents she wanted to overturn, which would "likely motivate unions to file charges focused on creating the vehicles to change those precedents."[4]

One of the precedents Abruzzo initially targeted in a 2022 public memo is the National Labor Relations Board's *Babcock* decision, which has been good law for *seventy-five years. See Babcock v. Wilcox Co.*, 77 N.L.R.B. 577 (1948). That case held that employers may express their opinion on unions at meetings that employees must attend. And both the Act and the First Amendment protect an employer's speech expressed to their employees on unionization, so long as the employer's speech contains no threat of reprisal or force or promise of benefit. These longstanding precedents are founded on the free expression of ideas and recognize that it is beneficial for employees to hear the opinions on unions from *both* employers and unions. Indeed, U.S. labor policy balances benefits and burdens neutrally among employers, employees, and unions alike, because that kind of

---

[2] Robert Iofalla, *Abruzzo's Plan to Overhaul NLRB Precedent Still in Need of Cases*, Bloomberg Law (Mar. 1, 2023), *available* at https://news.bloomberglaw.com/daily-labor-report/abruzzos-plan-to-overhaul-nlrb-precedent-still-in-need-of-cases.
[3] *Id*.
[4] *Id*.

policy avoids strife and unrest historically associated with labor disputes that negatively affect the public's interest. *See* 29 U.S.C. § 151.

But Abruzzo's actions disfavor neutral labor policy and are aimed at preventing employees from hearing their employer's opinion on unions. Despite employees' rights to support or *oppose* unions, Abruzzo *only* wants employees to hear opinions on unions from *unions*. So she wrote a memo. And published Memorandum GC 22-04 on the Board's public website.[5] In her public Memorandum, Abruzzo strongly criticized the 75-year-old *Babcock* precedent and said it was a "license to coerce" employees and "an anomaly in labor law" "based on a fundamental misunderstanding of employers' speech rights."[6]

Abruzzo then proposed a censorship scheme in her public Memorandum designed to overturn the *Babcock* precedent that she disfavors and suppress employers' speech to their employees. First, Abruzzo said, "I will urge the Board to correct that anomaly." Second, Abruzzo said, "I will propose the Board adopt sensible assurances that an employer must convey to employees in order to make clear that their attendance is truly voluntary."

By inserting *herself* into the discussion, Abruzzo's Memorandum is not merely her opinion or an attempt to convince others that *Babcock* is an anomaly. Rather, it is Abruzzo's attempt to intimidate employers so they will not express their opinion on unions at meetings that employees must attend, or risk that Abruzzo will

---

[5] *See* https://www.nlrb.gov/news-outreach/news-story/nlrb-general-counsel-jennifer-abruzzo-issues-memo-on-captive-audience-and.
[6] *See id.*

prosecute them before the National Labor Relations Board for an unfair labor practice. Moreover, her Memorandum is Abruzzo's attempt to coerce employers to "adopt" her approved words and language—"sensible assurances"—when they express their opinion on unions at meetings that employees must attend, or risk prosecution by her before the Board. When an official inserts herself into the discussion, her attempt "to convince" crosses the line into an attempt "to coerce" and is deemed a threat. Abruzzo crossed the line and threatened employers in her public Memorandum with prosecution before the Board.

Supreme Court precedent prohibits a *government official* from making a threat of prosecution that amounts to a censorship scheme abridging First Amendment liberties and infringing free speech. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 52, 64 (1963) (emphasis provided). The Sixth Circuit applied the *Bantam Books* precedent and held an association had standing to sue on behalf of its members whose speech were chilled "by way of threat of punishment and intimidation to quell speech." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 761, 764-65 (6th Cir. 2019).

As General Counsel, Abruzzo may *prosecute* unfair labor practices, but she may not *threaten prosecution* outside of the National Labor Relations Board's formal enforcement process. Abruzzo's threat of prosecution in her public Memorandum conflicts with the terms of her statutory authority under the Act. Abruzzo's *ultra vires* threat to prosecute employers in her public Memorandum chills ABC Michigan employer members' free speech rights and violates the First Amendment.

## STATEMENT OF FACTS

*The Act, Board, and the General Counsel*

The National Labor Relations Act governs labor law among private employers, unions, and employees. To promote the public's interest by eliminating strife and unrest historically associated with labor disputes, U.S. policy balances the burdens and benefits among these three groups. *See* 29 U.S.C. § 151. The National Labor Relations Board is an independent federal agency charged with enforcing the Act, a statute enacted by Congress in 1935 and codified at 29 U.S.C. §§ 151-169.

The Act governs, among other things, the right of most private-sector employees to determine whether to have unions as their bargaining representatives. The Act further provides remedies against unfair labor practices committed by private-sector employers and labor organizations.[7] The Act makes clear that a private employer does not commit an unfair labor practice when they express to their employees "any views, argument, or opinion" the employer has on employee union representation, so long as the speech contains no threat of reprisal or force or promise of benefit. 29 U.S.C. § 158(c).

The Board consists of five members and primarily acts as a quasi-judicial body in deciding and adjudicating cases based on formal records in administrative proceedings. Board members are appointed by the President to five-year terms, with Senate consent.[8] The Board sets agency policy primarily through the adjudication of

---

[7] *See* https://www.nlrb.gov/about-nlrb/what-we-do/introduction-to-the-nlrb.
[8] *Id*.

cases.[9] The Board also sets agency policy through proposed rulemaking subject to public notice and comment in accordance with the Administrative Procedure Act. Congress delegated to the Board the authority to make, amend, and rescind rules and regulations necessary to carry out the provisions of the Act. *See* 29 U.S.C. § 156.

In contrast, **Congress did *not* delegate** to the General Counsel the authority to make, amend, and rescind rules and regulations necessary to carry out the provisions of the Act. Although the Office of General Counsel is under the Executive Branch like the Board, the General Counsel position is independent and separate from the Board. Many years ago, the Board "controlled not only the filing of complaints, but their prosecution and adjudication" as well. *NLRB v. Food & Commercial Workers Union*, 484 U.S. 112, 117 (1987). But after 1947, Congress separated the prosecuting function from the adjudication function, placing the former in the General Counsel, and making that individual "an independent official appointed by the President." *Lewis* v. *NLRB*, 357 U.S. 10, 16, n.10 (1958); *see also* 29 U.S.C. § 153(d) (providing for appointment of the General Counsel). Congress thus separated the Board into "two independent branches," *Food & Commercial Workers*, 484 U.S. at 129, and made the General Counsel "independent of the Board's supervision and review." *Id*. at 118.

The General Counsel serves as a prosecutor whose responsibilities include impartially investigating and prosecuting unfair labor practices under the Act and before the Board, once a charge is filed by a union, employee, or employer. ECF No.

---

[9] *See* https://www.nlrb.gov/reports/agency-performance/board-decisions-issued.

1, PageID.9. Neither the General Counsel, Board, Regional Directors nor field office employees may initiate unfair labor practice charges under the Act. ECF No. 1, PageID.9. The General Counsel further serves in a supervisory role over the Regional Directors and field offices in processing those cases where charges are brought under the Act and in those cases the office prosecutes before the Board. ECF No. 1, PageID.9.

A charge deemed meritorious can result in the issuance of a complaint that could lead to an administrative hearing before the Board (unless there is a settlement). ECF No. 1, PageID.10. A complaint includes any unfair labor practice that occurred within the past six months of filing a charge. *See* 29 U.S.C. § 160(b). After issuing a complaint, the General Counsel becomes a representative for the charging party throughout settlement discussions and the adjudicative process before the Board. ECF No. 1, PageID.10. Although the Board cannot assess penalties, the General Counsel and Regional Directors may seek make-whole remedies, such as reinstatement and backpay for discharged workers, and informational remedies, such as requiring an employer to post notice promising to not violate the law. ECF No. 1, PageID.10.

### *Abruzzo's Memorandum GC 22-04 and Credible Threat to Prosecute Employers*

On April 7, 2022, Abruzzo issued Memorandum GC 22-04, in which she announced that she would seek to overturn longstanding precedent to prohibit employers from discussing unionization with employees during mandatory meetings. The Memorandum, entitled "The Right to Refrain from Captive Audience

and other Mandatory Meetings," was directed to all "Regional Directors, Officers-in-Charge, and Resident Officers." ECF No. 1, PageID.10; ECF No. 1-1, PageID.30-33.

Abruzzo's Memorandum was publicly published and posted on the Board's website, and it remains posted to the Board's public website at the time of filing this lawsuit. ECF No. 1, PageID.11. Abruzzo's public Memorandum is not an expression of her opinion to convince that *Babcock* is an anomaly. ECF No. 1, PageID.11. Abruzzo's public Memorandum is not an authorized government communication or speech protected by the First Amendment. ECF No. 1, PageID.11. Publicly publishing her Memorandum on the Board's website was not essential to Abruzzo's impartial investigative or prosecutorial decisions on (1) whether a charge against an employer under the Act was meritorious; (2) whether to issue a complaint against an employer after a charge was filed under the Act; (3) whether to settle with an employer charged under the Act; or (4) whether to prosecute, settle, or dismiss a charge or complaint against an employer under the Act. ECF No. 1, PageID.11.

The Board maintains on its public website[10] an official flowchart containing the essential steps in the Board's formal unfair labor practice enforcement process. ECF No. 1, PageID.11. The Board's flowchart reveals that the formal process does not require the General Counsel to post memos on the Board's public website. ECF No. 1, PageID.11 Nor does the Board's formal enforcement process make posting memos essential to the General Counsel's investigative or prosecutorial decisions. ECF No. 1, PageID.11 Abruzzo's **Memorandum GC 22-04** is not listed on the flowchart below:

---

[10] *See* https://www.nlrb.gov/resources/nlrb-process.

**CHARGE**
Filed with Regional Director; alleges unfair labor practice by employer or labor organization.

**INJUNCTION**
Regional Director **must** ask district court for temporary restraining order in unlawful boycott and certain picketing cases.

**INVESTIGATION**
Regional Director determines whether formal action should be taken.

**WITHDRAWAL – REFUSAL TO ISSUE COMPLAINT – SETTLEMENT**
Charge may, with Agency approval, be withdrawn before or after complaint is issued. Regional Director may refuse to issue a complaint; refusal (dismissal of charge) may be appealed to General Counsel. Settlement of case may occur before or after issuance of complaint (informal settlement agreement subject to approval of Regional Director; formal settlement agreement executed simultaneously with or after issuance of complaint, subject to approval of Board). A formal settlement agreement will provide for entry of the Board's order and may provide for a judgement from the court of appeals enforcing the Board's order.

**INJUNCTION**
General Counsel **may**, with Board approval, ask district court for temporary restraining order after complaint is issued in certain serious unfair labor practice cases.

**COMPLAINT AND ANSWER**
Regional Director issues complaint and notice of hearing. Respondent files answer in 14 days.

**HEARING AND DECISION**
Administrative Law Judge presides over a trial and files a decision recommending either (1) order to cease and desist from unfair labor practice and affirmative relief or (2) dismissal of complaint. If no timely exceptions are filed to the Administrative Law Judge's decision, the findings of the Administrative Law Judge automatically become the decision and order of the Board.

**DISMISSAL**
Board finds respondent did not commit unfair labor practice and dismisses complaint.

**REMEDIAL ORDER**
Board finds respondent committed unfair labor practice and orders respondent to cease and desist and to remedy such unfair labor practice.

**OTHER DISPOSITION**
Board remands case to Administrative Law Judge for further action.

**COURT ENFORCEMENT AND REVIEW**
Court of appeals can enforce, set aside or remand all or part of the case. U.S. Supreme Court reviews appeals from courts of appeals.

9

ECF No. 1, PageID.12-13. Abruzzo has never publicly disavowed her statements and views that she expressed in her public Memorandum. ECF No. 1, PageID.13. Abruzzo has never retracted her Memorandum from the Board's public website. ECF No. 1, PageID.13. Abruzzo's public Memorandum was not issued by the Board as proposed rulemaking pursuant to the Administrative Procedure Act; it was not subject to public notice and comment; and it was not published in the Federal Register. ECF No. 1, PageID.13.

In her public Memorandum, Abruzzo provided a brief history of the basic principles of labor law but then rejected one of those longstanding principles, stating: "[T]he Board years ago incorrectly concluded that an employer does not violate the Act by compelling its employees to attend meetings in which it makes speeches urging them to reject union representation." ECF No. 1-1, PageID.32. Abruzzo characterized the 75-year-old Board decision she was criticizing, *Babcock v. Wilcox Co.*, 77 N.L.R.B. 577 (1948), as a "license to coerce" employees and "an anomaly in labor law, inconsistent with the Act's protection of employees' free choice and based on a fundamental misunderstanding of employers' speech rights." ECF No. 1-1, PageID.32.

Abruzzo then explained how she would seek to use her position to overturn *Babcock*: by targeting employers with unfair labor practice prosecutions when an employer speaks to an employee about unionization and the employee is either required (1) to "convene" on paid time or (2) "cornered" by management while performing their job duties. ECF No. 1-1, PageID.32.

10

To further her goal to use her position to overturn the *Babcock* precedent, Abruzzo focused on two lines of attack. First, Abruzzo said, "I will urge the Board to correct that anomaly." Second, Abruzzo said, "I will propose the Board adopt sensible assurances that an employer must convey to employees in order to make clear that their attendance is truly voluntary." ECF No. 1-1, PageID.33.

*March 2023: Abruzzo Diligently Looks for New Cases*
*to Overturn Disfavored Precedents*

In March 2023, Bloomberg Law published an article on Abruzzo's efforts to use her position to change the law to disfavor employers, "Abruzzo's Plan to Overhaul NLRB Precedent Still in Need of Cases." ECF No. 1-2, PageID.34-37. The article noted that, in public comments at a recent legal conference, Abruzzo said she initially targeted over 50 separate legal issues and Board precedents she disfavored when she became General Counsel. ECF No. 1-2, PageID.35. As reported, several of those precedents are good law that Abruzzo "wants the [B]oard to overturn, yet [she doesn't] have a case where that's a possibility." ECF No. 1-2, PageID.35. The article reported that Abruzzo's use of memos and speeches to publicize those legal precedents she wanted to overturn would "likely motivate unions to file charges focused on creating the vehicles to change those precedents." ECF No. 1-2, PageID.35. In the article, Abruzzo said, "It's more important to me that we are remedying workplace violations as quickly as possible." ECF No. 1-2, PageID.36 The conference moderator joked that she "saw union counsel making a Christmas wish list for Jennifer." ECF No. 1-2, PageID.35.

11

Some regional offices have started to prosecute employers charged with unfair labor practices related to general allegations that an employer required its employees to attend mandatory work meetings for the purpose of exposing them to the employer's views in opposition to the union. For example, Region 29 in Brooklyn, New York, has investigated charges and is prosecuting a complaint against Amazon for unfair labor practices based on its speech to employees about unionization. *See e.g. In re Amazon.com Services, Inc. et al.*, Case No. 29-CA-280153, National Labor Relations Board, Region 29.[11]

### *Abruzzo's Credible Threat of Prosecution in her Memorandum Chills ABC Michigan Employer Members' Protected Speech*

Jimmy E. Greene is the President and CEO of Associated Builders and Contractors of Michigan.[12] *See* Declaration of Jimmy Greene on behalf of ABC Michigan, ECF No. 6-1, ¶ 3. As President, Greene is responsible for the Public Policy and Government Affairs in Michigan for ABC Michigan and its employer members. ECF No. 6-1, ¶ 4.

ABC Michigan is a statewide trade association representing the commercial and industrial construction industries. Membership in ABC Michigan is available to all private businesses and employers in the construction industry that believe in the Merit Shop philosophy, which means members believe neutrally balanced labor law

---

[11] The *Amazon* case pending before the NLRB has been consolidated with several other cases involving Amazon in which the Amazon Labor Union is also a party. The *Amazon* NLRB case has been further cited in papers filed in another case against Abruzzo involving the Memorandum, which is pending in the United States District Court for the Eastern District of Texas, Case No. 4:22-cv-00605-ALM.
[12] *See* https://www.abcmi.com/Who-is-ABC/About-ABC-of-MI/ABC-Staff.

legislation that embraces fair play for *both* employer and employee is essential to the preservation of our nation's free enterprise system. ECF No. 6-1, ¶ 8. ABC Michigan and its employer members are subject to the National Labor Relations Act. ECF No. 6-1, ¶ 9.

ABC Michigan employer members are dedicated to open competition, equal opportunity, and accountability in the construction industry. ECF No. 6-1, ¶ 10. ABC Michigan employer members develop people, win work, and deliver that work safely, ethically, profitably, and for the betterment of the communities in which ABC Michigan and its employer members work. ECF No. 6-1, ¶ 11.

ABC Michigan and its employer members are on notice that Abruzzo posted her Memorandum GC 22-04 to the Board's public website, where it remains posted at the time of filing this lawsuit. ECF No. 6-1, ¶ 12. ABC Michigan and its employer members are further on notice of Abruzzo's plan to overturn the *Babcock* precedent that she described in her public Memorandum. ECF No. 6-1, ¶ 13. For example, ABC Michigan and its employer members are on notice that to advance her goal to use her position as General Counsel to overturn the *Babcock* precedent, Abruzzo focused on two lines of attack. First, Abruzzo said, "I will urge the Board to correct that anomaly." Second, Abruzzo said, "I will propose the Board adopt sensible assurances that an employer must convey to employees in order to make clear that their attendance is truly voluntary." ECF No. 6-1, ¶ 14.

ABC Michigan and its employer members are on notice of Abruzzo's recent public remarks as reported by Bloomberg Law on March 1, 2023. ECF No. 6-1, ¶ 15.

For example, ABC Michigan and its employer members are on notice that as reported, Abruzzo "is still lacking cases she can use to challenge certain precedents as part of her campaign to shift federal labor law to benefit workers and unions." ECF No. 6-1, ¶ 16. Moreover, ABC Michigan and its employer members are on notice that as reported by Bloomberg Law, Abruzzo's use of memos and speeches to publicly identify those precedents she wanted to overturn would "likely motivate unions to file charges focused on creating the vehicles to change those precedents." ECF No. 6-1, ¶ 17.

ABC Michigan employer members' interpretation of Abruzzo's public Memorandum is that it's intended: (1) as a threat to intimidate employers and that Abruzzo will prosecute employers before the Board for an unfair labor practice if they express their views, argument, or opinion on unionization during mandatory work meetings; (2) as a threat to intimidate employers by placing a target on their backs and declaring open season for unions to file unfair labor practice charges against employers to create a vehicle for Abruzzo to overturn *Babcock*; and (3) as a threat to intimidate employers by coercing them to "adopt" Abruzzo's approved words and language—"sensible assurances"—when employers express their opinion on unions at meetings that employees must attend, or risk prosecution by her before the Board. ECF No. 6-1, ¶ 18.

But for Abruzzo's threat of prosecution in her public Memorandum by inserting herself into the discussion, ABC Michigan employer members would engage in lawful free speech and express to their employees their views, argument, or opinion

14

on unionization during mandatory work meetings. ECF No. 6-1, ¶ 19. These ABC

Michigan employer members do not, however, wish to make threats of reprisal or

force or promises of benefit during speeches to their employees on unionization at

mandatory work meetings. ECF No. 6-1, ¶ 20.

**LEGAL STANDARD**

Pursuant to a motion for preliminary injunctive relief under Fed. R. Civ. P. 65,

courts consider four factors when ruling:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Speech First*, 939 F.3d at 763. The plaintiff bears the burden of establishing his

entitlement to a preliminary injunction. *See Overstreet v. Lexington-Fayette Urban*

*County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Although a preliminary injunction

is an extraordinary remedy, "[t]hese factors are not prerequisites which must be

met, but are interrelated considerations that must be balanced together." *Northeast*

*Ohio Coalition for Homeless and Service Employees v. Blackwell,* 467 F.3d 999, 1009

(6th Cir. 2006) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v.*

*Griepentrog*, 945 F.2d 150, 152 (6th Cir. 1991)).

In First Amendment cases, "the crucial inquiry is usually whether the plaintiff

has demonstrated a likelihood of success on the merits." *Hamilton's Bogarts, Inc. v.*

*Michigan*, 501 F.3d 644, 649 (6th Cir. 2007). While a court must engage in

balancing, the irreparable harm factor is also critical, and a strong showing on the

15

other factors cannot eliminate the irreparable harm requirement. *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982).

## ARGUMENT

**I.   This Court should grant a preliminary injunction to stop Abruzzo from chilling protected speech by threatening to prosecute employers for speaking to their employees about unionization.**

The Court should issue a preliminary injunction to prevent Abruzzo from threatening employers with prosecution for engaging in speech protected by the First Amendment. Abruzzo's public Memorandum may not reasonably be interpreted as her opinion or an attempt to convince others that *Babcock* is an anomaly because she inserted herself into the discussion. By doing so in her Memorandum, Abruzzo crossed the line into illegal coercive behavior.

This Court may issue the injunction ABC Michigan seeks because, under *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), a federal official may be sued in her official capacity for injunctive relief when the official commits a purely *ultra vires* act and violates the Constitution. Abruzzo's threat to prosecute employers subject to the Act by her public Memorandum is a purely *ultra vires* act that conflicts with both the First Amendment and the terms of her statutory authority under the Act. Sovereign immunity does not protect her non-discretionary and purely *ultra vires* threat in her public Memorandum to prosecute employers for their lawful speech. *See Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1041 (6th Cir. 2022) (citing *Larson*, 337 U.S. at 689); *Bantam Books,* 372 U.S. at 64; *Speech First,* 939 F.3d at 761, 764-65.

16

Moreover, courts have recognized that individuals may seek injunctive relief against an official who has threatened to prosecute them for protected speech. "The First Amendment forbids a public official to attempt to suppress the protected speech of private persons by threatening that legal sanctions will at his *urging* be imposed unless there is compliance with his demands." *Backpage.com, LLC v. Dart*, 807 F.3d 229, 231 (7th Cir. 2015) (Posner, J.) (emphasis added) (citing, inter alia, *Bantam Books*, 372 U.S. at 64-72). That is what Abruzzo has done here: In her public Memorandum, Abruzzo said that *she* would "urge the Board to correct" *Babcock*, which she viewed as an "anomaly."[13]

The *Backpage* case involved the Cook County sheriff's efforts "intended to crush" a business that hosted an online forum for classified advertising involving "adult" sex-related services. *Id.* at 230. The sheriff wanted to "shut down an avenue of expression of ideas and opinion," which he could not do legally as sheriff based on existing laws. *Id.* So instead, he wrote a letter to credit card companies used on the website—on official letterhead, with his signature as "Cook County Sheriff." It began: "As the Sheriff of Cook County, a father and a caring citizen, I write to request that your institution immediately cease and desist from allowing your credit cards to be used to place ads on websites like Backpage.com." *Id.*

The court held that the sheriff's letter violated Backpage's First Amendment rights and reversed the district court's denial of a preliminary injunction. *Id.* at 238-

---

[13] The word "urge" is defined as "[t]o advocate earnestly the doing, consideration, or approval of; press for[.]" *Urge, The American Heritage Dictionary of the English Language* (5th ed. 2022).

39. The court noted that the letter "was not merely an expression of Sheriff Dart's opinion" but "was designed to compel the credit card companies to act"—and thus suppress Backpage's speech—"by inserting Dart into the discussion." *Id*. at 232. The letter was not merely an "attempt[] to convince" but an "attempt to coerce[]." *Id*. at 230 (quoting *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003)). And "[a] public-official defendant who threatens to employ coercive state power to stifle protected speech violates a plaintiff's First Amendment rights, regardless of whether the threatened punishment comes in the form of the use (or, misuse) of the defendant's direct regulatory or decisionmaking authority over the plaintiff, or in some less direct form." *Id.* (quoting *Okwedy*, 333 F.3d at 344).

Here, like Sheriff Dart, Abruzzo wants to "shut down an avenue of expression of ideas and opinion" to prevent employers from giving employees their opinion on unionization during mandatory work meetings. Apart from her public Memorandum, Abruzzo has no legal power to stifle employers' speeches to their employees during mandatory work meetings, which are protected by the First Amendment, the Act, and longstanding precedent. And just as Sheriff Dart attempted to coerce businesses and stifle speech through a letter, Abruzzo has sought to coerce businesses and stifle speech through a memo. Like Dart's letter, Abruzzo's memo includes all the indicia of its official nature: it bears the heading "OFFICE OF THE GENERAL COUNSEL," states that it is from "Jennifer A. Abruzzo, General Counsel," and is signed by Abruzzo with her initials.

Abruzzo "inserted" *herself* "into the discussion" when she said *she* would "urge the Board to correct" the *Babcock* precedent. The memo is not merely an attempt "to convince" others that *Babcock* is incorrect; it is a threat of prosecution intended "to coerce" employers subject to the Act to "adopt sensible assurances" in their speeches during mandatory work meetings to avoid prosecution by her before the Board.

Abruzzo's public Memorandum is a classic example of illegal jawboning. "Jawboning is the use of official speech to inappropriately compel private action. Jawboning occurs when a government official threatens to use his or her power—be it the power to prosecute, regulate, or legislate—to compel someone to take actions that the state official cannot."[14] "The term 'jawboning' was first used [during World War II] to describe official speech intended to control the behavior of businessmen and financial markets."[15] "Jawboning is dangerous because it allows government officials to assume powers not granted to them by law. The capriciousness of jawboning is also cause for concern. Individual officials can jawbone at will, without any sort of due process, by opening their mouths, taking up a pen, or tweeting."[16]

Abruzzo knows that—absent her illegal jawboning—it's unlikely that a union would file a charge against an employer for an unfair labor practice when they lawfully exercise their speech rights during mandatory work meetings. She knows

---

[14] *See* Will Duffield, *Jawboning against Speech*: *How Government Bullying Shapes the Rules of Social Media*, Policy Analysis no. 934, at p. 2, Cato Institute, Washington D.C. (Sep. 12, 2022), *available* at https://www.cato.org/policy-analysis/jawboning-against-speech.
[15] *Id.*
[16] *Id.*

that is unlikely because the 75-year-old *Babcock* precedent, which is well-settled law, would foreclose such a charge. So, Abruzzo resorts to writing public memos—jawboning—in an attempt to leverage her official power to control and coerce private employers' behavior and suppress their protected speech. Abruzzo's public memo-writing approach allows her to intimidate employers through threat of prosecution to forgo their free-speech rights due to the threat of being dragged through a prosecutorial process before the Board. Her insidious memo writing—such as Memorandum GC 22-04—is particularly troubling because Abruzzo is vested with authority to enforce labor laws under the Act *within* the Board's formal enforcement process. But she is wielding that power *outside* of the Board's formal enforcement process, rather than impartially addressing specific, alleged unfair labor practices through the Act's administrative scheme enacted by Congress.

ABC Michigan has demonstrated that Abruzzo's threat has objectively chilled its employer members from exercising their First Amendment Free Speech rights. Thus, ABC Michigan is entitled to a preliminary injunction to stop Abruzzo from her ongoing and continued threats of prosecution in her public Memorandum.

**A. Plaintiff is likely to prevail on the merits.**

Under the first preliminary injunction factor, a movant must demonstrate at least a meaningful "[p]robability of success." *Garlock, Inc. v. United Seal Inc.*, 404 F.2d 256, 257 (6th Cir. 1968). Plaintiff is likely to succeed on the merits of its First Amendment claim because threats from a government official that censor speech violate the Free Speech Clause of the First Amendment. *Bantam Books,* 372 U.S. at

20

64; *Speech First,* 939 F.3d at 761, 764-65. Abruzzo is infringing ABC Michigan employer members' Free Speech rights by her threat to prosecute employers in her public Memorandum.

### 1.    Plaintiff ABC Michigan has Article III standing.

ABC Michigan has standing to pursue its First Amendment claim because it can show: (1) an injury-in-fact that is concrete, particularized, and imminent; (2) fairly traceable to defendant's conduct; and (3) would be redressed by a favorable court decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). Article III standing does not require a plaintiff to engage in "costly futile gestures simply to establish standing, particularly when the First Amendment is implicated." *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F.3d 397, 406 (6th Cir. 1999) (citing *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988); *Clements v. Fashing*, 457 U.S. 957, 962 (1982)).

An association has standing to bring suit on behalf of its members when (a) its members would otherwise have standing to sue in their own right, (b) the interests it seeks to protect are germane to the organization's purpose, and (c) neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit. *Speech First*, 939 F.3d at 763.

ABC Michigan has Article III standing to sue on behalf of its employer members. *First*, ABC Michigan employer members are subject to the Act and labor laws enforced by Abruzzo pursuant to the Act. ECF No. 1, PageID.6. ABC Michigan employer members' Free Speech rights are infringed and objectively chilled from

threats of prosecution in the public Memorandum. ECF No. 1, PageID.6. Those threats of prosecution in the Memorandum are ongoing and continuous: Abruzzo's Memorandum remains posted on the Board's public website. ECF No. 1, PageID.11. *Second*, ABC Michigan employer members' constitutional injuries can be traced to Abruzzo because she signed the Memorandum in her official capacity as General Counsel and it remains posted on the Board's public website. ECF No. 1, PageID.31,33. *Third*, ABC Michigan's employer members would receive redress from an injunction (1) stopping Abruzzo from threatening to prosecute employers in her Memorandum on the Board's public website; and (2) ordering Abruzzo to retract, delete, and remove her Memorandum from the Board's public website. ECF No. 1, PageID.28. *Fourth*, ABC Michigan has associational standing to sue because its employer members would otherwise have standing to sue. *Fifth*, protecting employers' First Amendment Free Speech rights is germane to ABC Michigan's purpose in accordance with its Merit Shop philosophy and belief that neutrally balanced labor laws for *both* employer and employee are essential to the preservation of our nation's free enterprise system. ECF No. 1, PageID.6. *Sixth*, neither the claims asserted, nor the relief requested requires the participation of ABC Michigan employer members in the lawsuit. ECF No. 1, PageID.6.

## 2. Under Count I, ABC Michigan is likely to prevail on its Free Speech claim because Abruzzo's Memorandum coerces and compels employers to express certain speech to their employees.

ABC Michigan is likely to prevail on its Free Speech claim because Abruzzo's Memorandum compels speech in violation of the First Amendment.

The Supreme Court has repeatedly held that freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maryland,* 430 U.S. 705, 714 (1977) (cleaned up). "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943). In *Janus v. AFSCME, Council 31*, the Supreme Court applied this fundamental right not to speak to prohibit public unions from collecting agency fees from employees unless an employee affirmatively consents to pay such fees to the unions. 138 S. Ct. 2448, 2486 (2018).

And the Supreme Court has *never* held that employers are prohibited from speaking to their employees as a "captive audience." It has applied a "captive audience" analysis in other contexts "only sparingly to protect unwilling listeners from protected speech." *Snyder v. Phelps*, 562 U.S. 443, 459 (2011) (emphasis provided); *see Rowan v. Post Office Dept.*, 397 U.S. 728, 736-38 (1970) (upholding a statute allowing a homeowner to restrict delivery of offensive mail to their home); *see Frisby v. Schultz*, 487 U.S. 474, 477, 484-85 (1988) (upholding an ordinance prohibiting picketing near an individual's residence).

Here, Abruzzo's Memorandum violates the compelled speech doctrine under the First Amendment, because it impermissibly compels employers to adopt certain words when they speak to their employees about unions during required meetings. Specifically, her Memorandum compels employers during "convened" and "cornered"

work meetings on employee union representation to "adopt sensible assurances" in their speech, so the employees know "their attendance is truly voluntary."

Abruzzo's public Memorandum is consistent with recent reports characterizing her actions as favoring unions. Because in an Abruzzo world, she "can prescribe what shall be orthodox" for employers to say to their employees while the employees are at work. *See Barnette*, 319 U.S. at 642. Conveniently for Abruzzo (and unions), the very words she compels employers to speak would then let employees know they don't have to listen to their employer's opinion on unionization during mandatory meetings. This compulsion by Abruzzo to coerce employers to adopt certain words when they speak to their employees while at work violates the First Amendment.

### 3.  Under Count II, Plaintiff is likely to prevail on its Free Speech claim because Abruzzo's Memorandum regulates employer speech based on its content.

Abruzzo's Memorandum also violates the First Amendment because it threatens to punish speech based on its content.

"[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter or its content." *Police Department of Chicago v. Mosley*, 408 U.S. 92, 95-96 (1972). "Content-based regulations are presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992); *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (plurality opinion).

Thus, when regulating speech, the government must be neutral as to both viewpoint and subject matter. *See Perry Educ. Assn. v. Perry Local Educators' Assn.*,

460 U.S. 37, 45 (1983). Viewpoint neutrality forbids the government from regulating speech based on the ideology of the message. Subject-matter neutrality forbids the government from regulating speech based on its topic.

Abruzzo's Memorandum violates the First Amendment because it is a content-based regulation that impermissibly regulates speech based on both the viewpoint expressed and the topic of expression. First, her Memorandum is a content-based regulation because it regulates *employer* speech on employee union representation and not *union or employee* speech and by its very terms, draws a distinction among speech based on the viewpoint expressed. *See generally Boos v. Berry*, 485 U.S. 312 (1988) (emphasis provided). Second, her Memorandum is a content-based regulation because it allows employer speech about the subject of employee union representation when employees are told their attendance is truly voluntary, but not otherwise. *See generally Carey v. Brown*, 447 U.S. 445 (1980).

Once again, Abruzzo's Memorandum favors unions and disfavors employers because she only places content-based speech restrictions on employers, and not on unions and employees. Abruzzo's content-based speech restrictions applied to employers in her Memorandum are "presumptively invalid" under the First Amendment. *See City of St. Paul*, 505 U.S. at 382.

**4. Under Count III, Plaintiff is likely to prevail on its Free Speech and Due Process claim because Abruzzo's Memorandum is unduly vague.**

ABC Michigan is also likely to prevail on the merits of its Free Speech and Due Process claim because Abruzzo's Memorandum is unduly vague: a reasonable employer cannot know what speech is prohibited or permitted.

"[S]tandards of permissible statutory vagueness are strict in the area of free expression." *NAACP v. Button*, 371 U.S. 415, 433 (1963). Because "First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *Id.* at 432-33; *see also, e.g., Baggett v. Bullitt*, 377 U.S. 360, 366 (1964) (invalidating statutory provisions "because their language [was] unduly vague, uncertain, and broad," particularly the term "subversive," which gave individuals very little guidance as to what speech and activities were prohibited). *Id.*

Nearly a century ago, the Supreme Court held a law is unconstitutionally vague "when people of common intelligence must necessarily guess at its meaning." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926). The void-for-vagueness doctrine is applicable in challenges to laws, ordinances, rules, policies, and statutes under both the First and Fifth Amendments to the Constitution. For example, in *City of Chicago v. Morales*, the Supreme Court invalidated a law on due process vagueness grounds. 527 U.S. 41 (1999). Due process challenges are about basic fairness and notice: reasonable people should not have to "guess" at the meaning of

a statute or rule as to what behavior is permitted and what is prohibited. *See Connally*, 269 U.S. at 391.

Abruzzo's Memorandum is unconstitutionally vague under the First and Fifth Amendments because a reasonable employer cannot know what speech is prohibited or permitted. Her Memorandum requires employers to "adopt sensible assurances" in their speeches to employees on unionization during "convened" and "cornered" work meetings. But a reasonable employer has minimal guidance as to what would constitute a "sensible" assurance during "convened" and "cornered" work meetings and thus cannot know what speech is prohibited or permitted. Abruzzo's Memorandum therefore fails under both the First and Fifth Amendments because it is unduly vague.

### 5. Under Count IV, Plaintiff is likely to prevail on its Free Speech claim because Abruzzo's Memorandum is a prior restraint on employer speech.

ABC Michigan is also likely to prevail on its First Amendment claim because Abruzzo's Memorandum imposes a prior restraint on employers' speech.

The Supreme Court has declared that "prior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). And the Supreme Court has made clear that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971).

Prior restraints are unconstitutional outside exceptional and limited circumstances, such as military necessities during wartime. *Near v. Minnesota,* 283 U.S. 697, 716 (1931). Preventing prior restraints of speech is an essential component of the First Amendment's free speech guarantee. *Freedman v. Maryland*, 380 U.S. 51, 58 (1965). The policy against prior restraints is "deeply etched in our law" because "a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975) (emphasis in original).

*Bantam Books* is particularly instructive here. In that case, a state commission sent notices to book distributors advising them that it had deemed certain books "objectionable" for sale to minors. The notices included a typical reminder to the recipient of the commission's "duty to recommend to the Attorney General prosecution of purveyors of obscenity" and informed the distributor that the commission had sent lists of "objectionable" books to local police. 372 U.S. at 61-63. The effect of the written notices was to impose an informal censorship scheme, which constituted an unconstitutional prior restraint through "intimidation and threat of prosecution." 372 U.S. at 64.

Abruzzo's Memorandum imposes a similar unconstitutional prior restraint because it impermissibly regulates the content of employer speech in certain forums before such speech occurs. As discussed, it prohibits employers from communicating their views, arguments, or opinions on unionization to their employees during

28

"convened" or "cornered" work meetings, unless an employer "adopts sensible assurances" in their speech, so the employees know "their attendance is truly voluntary." Like the notices to book distributors in *Bantam Books*, Abruzzo's threat of prosecution in her public Memorandum is an informal censorship scheme and unconstitutional prior restraint targeting employers by reason of "intimidation and threat of prosecution." *See id*.

Her Memorandum commits a cardinal sin in regulating speech that is contrary to longstanding policy and First Amendment jurisprudence: Abruzzo desires to "throttle" employers "beforehand" when regulating their speech, which is a prior restraint that violates the First Amendment. *See Conrad*, 420 U.S. at 559.

## B. The remaining preliminary injunction factors favor Plaintiff.

### 1. Plaintiff's loss of its First Amendment rights is irreparable without an injunction.

ABC Michigan has established that it is likely to prevail on the merits of its Free Speech claims. Thus, it has also shown that its injury is irreparable without an injunction under the second preliminary injunction factor because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (plurality opinion) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)).

### 2. Issuance of an injunction would not harm Abruzzo because she is a recalcitrant official.

"Recalcitrant officers enjoy no sovereign immunity from orders commanding them to perform their non-discretionary duties or commanding them to cease

29

performance of purely *ultra vires* acts." *See Larson*, 337 U.S. at 689; *Nabors*, 35 F.4th at 1041. Because of the loss of its employer members' First Amendment Free Speech rights, ABC Michigan has demonstrated that, without an injunction, it would suffer irreparable harm that would outweigh any potential harm to Abruzzo since she is a recalcitrant official. *See Friendship Materials*, 679 F.2d at 105.

### 3. The public interest is served by issuing an injunction to prevent the violation of constitutional rights.

The Sixth Circuit has held that "the public interest is served by preventing the violation of constitutional rights." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati,* 363 F.3d 427, 436 (6th Cir. 2004). Thus, an injunction serves the public interest here to prevent the violation of ABC Michigan employer members' First Amendment Free Speech rights.

### CONCLUSION

ABC Michigan on behalf of its employer members respectfully requests a preliminary injunction (1) stopping Abruzzo from threatening to prosecute employers in her Memorandum on the Board's public website; and (2) ordering Abruzzo to retract, delete, and remove her Memorandum from the Board's public website.

March 17, 2023                    Respectfully submitted,

                                  */s/ Keith E. Eastland*
                                  Keith E. Eastland
                                  Stephen J. van Stempvoort
                                  Brett Swearingen
                                  MILLER JOHNSON
                                  45 Ottawa Ave. SW
                                  Grand Rapids, MI 49503

Telephone: (616) 831-1700
eastlandk@millerjohnson.com
vanstempvoorts@millerjohnson.com
swearingenb@millerjohnson.com


M. E. Buck Dougherty III, *pro hac vice forthcoming*
Jeffrey Jennings, *pro hac vice forthcoming*
Noelle Daniel, *pro hac vice forthcoming*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jjennings@libertyjusticecenter.org
ndaniel@libertyjusticecenter.or

Attorneys for Plaintiff Associated Builders and
Contractors of Michigan

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of W.D. Mich. LCivR

7.3(b)(i) because this brief contains 7,456 words, excluding the parts of the brief

exempted by W.D. Mich. LCivR 7.3(b)(i).

2.  This brief has been prepared in a proportionally spaced typeface using

Microsoft Word 365 Version 2302 in 12-point Century Schoolbook font.

*/s/ Keith E. Eastland*
Keith E. Eastland
Stephen J. van Stempvoort
Brett Swearingen
MILLER JOHNSON
45 Ottawa Ave. SW
Grand Rapids, MI 49503
Telephone: (616) 831-1700
eastlandk@millerjohnson.com
vanstempvoorts@millerjohnson.com
swearingenb@millerjohnson.com


M. E. Buck Dougherty III, *pro hac vice forthcoming*
Jeffrey Jennings, *pro hac vice forthcoming*
Noelle Daniel, *pro hac vice forthcoming*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jjennings@libertyjusticecenter.org
ndaniel@libertyjusticecenter.or

Attorneys for Plaintiff Associated Builders and
Contractors of Michigan

**CERTIFICATE OF SERVICE**

I certify that, on March 17, 2023, this Brief in Support of Plaintiff's Motion for

Preliminary Injunction, along with the supporting Declaration of Jimmy E. Green

on behalf of ABC Michigan, were served on Defendant Jennifer A. Abruzzo and the

United States by registered or certified mail at the following addresses:

Jennifer A. Abruzzo
General Counsel
National Labor Relations Board
1015 Half Street SE
Washington, D.C. 20570-0001

Merrick B. Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530-0001

Ryan Cobb
Civil Division Chief
Office of the United States Attorney
for the W.D. of Michigan
330 Ionia Ave. NW, Suite 501
Grand Rapids, MI 49503

> */s/ Keith E. Eastland*
> Keith E. Eastland
> Stephen J. van Stempvoort
> Brett Swearingen
> MILLER JOHNSON
> 45 Ottawa Ave. SW
> Grand Rapids, MI 49503
> Telephone: (616) 831-1700
> eastlandk@millerjohnson.com
> vanstempvoorts@millerjohnson.com
> swearingenb@millerjohnson.com