UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASSOCIATED BUILDERS AND
CONTRACTORS OF MICHIGAN,

      Plaintiff,

CASE No. 1:23-cv-277

v.

HON. ROBERT J. JONKER

JENNIFER A. ABRUZZO, in her official
Capacity as GENERAL COUNSEL NATIONAL
LABOR RELATIONS BOARD,

      Defendant.
_____/

## **OPINION AND ORDER**

### **INTRODUCTION**

Under current National Labor Relations Board precedent, employers may require their workers to attend meetings in which the employers can opine about ongoing unionization efforts. In April 2022, National Labor Relations Board General Counsel Jennifer Abruzzo issued a memorandum taking the position that these "captive audience" meetings were unfair labor practices and indicating the General Counsel would seek to convince the NLRB to overturn its previous decisions on the issue. And the General Counsel subsequently filed a brief in an ongoing NLRB proceeding that requested the Board to do just that. No decision from the Board has yet been issued.

Associated Builders and Contractors of Michigan (a statewide trade association) is not a party to that NLRB proceeding, or to any other current proceeding. Nor is it, or any of its members in the middle of an organizational campaign or facing any ULP proceeding on the "captive audience" issue. But in this civil lawsuit alleging First Amendment violations, the organization

argues all of its members have been harmed by the General Counsel's memorandum. It claims that but for the General Counsel's memorandum, and other wistful statements from the General Counsel seeking more pro-union complaints to pursue, its members would hold captive audience meetings as they are currently permitted to do. ABC Michigan does not dispute that the General Counsel may seek to overturn precedent in the normal course of NRLB operations as set out by the National Labor Relations Act, which is what she has done in a pending action. But it claims that by issuing the memorandum as she did, the General Counsel acted in an *ultra vires* manner that subjects her to suit here in district court. It seeks an injunctive order requiring the General Counsel to remove the memorandum from the NLRB website.

The General Counsel moves to dismiss. (ECF No. 16). The General Counsel claims that she acted well within her prosecutorial authority in issuing the memorandum, and thus this Court lacks subject matter jurisdiction over the matter under the framework of the NLRA. Furthermore, the General Counsel asserts that ABC Michigan has failed to establish Article III associational standing over this matter. And even if ABC Michigan could clear these procedural hurdles, the General Counsel argues that the organization has failed to plead *Twombly* plausible First Amendment violations.

The Court heard argument on ABC Michigan's motion for injunctive relief and the General Counsel's motion to dismiss on July 19, 2023, and thereafter took both motions under advisement. For the reasons that follow, the Court grants the defense motion to dismiss and denies as moot Plaintiff's motion for preliminary injunction.

**BACKGROUND**

### 1. *The Parties*

ABC Michigan is a statewide association representing the commercial and industrial construction industries. (Compl. ¶ 27). Membership in ABC Michigan is available to all private businesses and employers in the construction industry that believe in the "Merit Shop" philosophy, which ABC Michigan describes as believing that "neutrally balanced labor law legislation that embraces fair play for *both* employer and employee is essential to the preservation of our nation's free enterprise system." (*Id.* at ¶ 86). Put differently, ABC Michigan's members are "dedicated to open competition, equal opportunity, and accountability in the construction industry." (*Id.* at ¶ 88).

Defendant Jennifer Abruzzo was appointed General Counsel of the National Labor Relations Board in 2021. (Compl. ¶ 1). As ABC Michigan explains it, in this role she is responsible for the impartial investigation and prosecution of unfair labor practice allegations under the Act once a charge is filed, and for the general supervision of the regional field offices in processing and prosecuting cases before the NLRB. (*Id.* at ¶ 30).

### 2. *The "Captive Audience" Memorandum*

On April 7, 2022, the General Counsel sent a Memorandum to NLRB Regional Directors and Officers ("GC 22-04 Memorandum") (ECF No. 1-1, PageID.31-33). The memorandum contained a subject line stating: "The Right to Refrain from Captive Audience and Other Mandatory Meetings." The first paragraph summarized the position further detailed in the memorandum as follows:

> In workplaces across America, employers routinely hold mandatory meetings in which employers are forced to listen to employer speech concerning the exercise of their statutory labor rights, especially during organizing campaigns. As I explain below, those meetings inherently involve an unlawful threat that employees will be disciplined or suffer other reprisals if they exercise their protected

3

> right not to listen to such speech. I believe that the NLRB case precedent, [*Babcock & Wilcox Co.*, 77 NLRB 577 (1948)] which has tolerated such meetings, is at odds with fundamental labor-law principles, our statutory language, and our congressional mandate. Based thereon, I plan to urge the Board to reconsider such precedent and find mandatory meetings of this sort unlawful.

(ECF No. 1-1, PageID.31).

The General Counsel went on to state that she would "urge the Board to correct that anomaly" (that is, the *Babcock* decision) and would propose that the Board "adopt sensible assurances that an employer must convey to employees in order to make clear that their attendance is truly voluntary." (*Id.* at PageID.32). As ABC Michigan puts it, to pursue this goal, the General Counsel could not simply work for promulgation of a new rule through the traditional agency notice and comment rule making process; rather, the General Counsel needed a complaint against an employer first. The need for such a complaint was detailed in a subsequent *Bloomberg Law* article entitled "Abruzzo's Plan to Overhaul NLRB Precedent Still in Need of Cases." ABC Michigan has attached the article as an exhibit to their complaint. (ECF No. 1-2).[1]

---

[1] It appears that the General Counsel did not need to wait long for a complaint to advance the position in the GC 22-04 memo. Four days after the memo issued, Ms. Abruzzo filed a brief in *Cemex Construction Materials Pacific, LLC*, urging that the Board overrule a number of precedents. Among other precedents, the brief asked that the Board hold that captive audience meetings are per se unlawful and overrule *Babcock*. *See* Brief in Support of General Counsel's Exceptions to the Administrative Law Judge's Decision, Cemex Construction Materials Pacific, LLC, No. 28-CA-230115 (Apr. 11, 2022) *available at* https://www.nlrb.gov/case/28-CA-230115. Based on the NLRB's online docket in that case, at the aforementioned link, it does not appear that the Board has issued a decision in the matter. It appears the General Counsel has filed briefs in other cases currently pending before the NLRB as well. Ms. Abruzzo has filed a brief asking that the Board overrule *Babcock*. *See* Counsel for the General Counsel's Brief in Support of Exceptions to the Administrative Law Judge's Decision, *Amazon.com Services LLC*, No. 29-CA-280153 (Mar. 31, 2023). Further briefing has been filed, no decision from the Board has yet issued as of the date of this decision. ABC Michigan concedes that the General Counsel is fully within her rights to file these briefs seeking to overturn *Babcock*.

### 3. *ABC Michigan Claims of Threat*

According to ABC Michigan's President and CEO, Jimmy Greene, ABC Michigan and its members have notice of the General Counsel's memorandum, and public remarks. (Greene Decl. ¶¶ 12, 15 ECF No. 6-1, PageID.103, 104). ABC Michigan's members have interpreted the memorandum as 1) a threat to prosecute them if they express their views, argument, or opinion on unionization during a mandatory work meeting; 2) a threat "declaring open season for unions to file unfair labor practice charges against employers;" and 3) a threat to coerce employers to adopt the General Counsel's position. (Greene Decl. ¶ 18, ECF No. 6-1, PageID.104-105). Mr. Greene further states that "[b]ut for [the General Counsel's] threat of prosecution in her public Memorandum . . . ABC Michigan employer members would engage in lawful free speech and express to their employees their views, argument, or opinion on unionization during mandatory work meetings." (Green Decl. ¶ 19, ECF No. 6-1, PageID.105). There is no explanation in the Declaration, or elsewhere, as to why the General Counsel's memorandum is more intimidating than her publicly filed briefs on the issue in pending proceedings.

## PROCEDURAL HISTORY

ABC Michigan filed this lawsuit on March 16, 2023. The Complaint raises four counts for relief, all of which assert the memorandum and the General Counsel's statements seeking cases to prosecute violate the First Amendment to the United States Constitution. ABC Michigan filed its motion for preliminary injunction the next day, March 17, 2023. (ECF No. 5). The motion seeks an Order that 1) stops the General Counsel from threatening to prosecute employers and 2) requires her to remove the GC 22-04 memorandum from the NLRB's website. The partis negotiated a stipulated briefing schedule to address both the preliminary injunction motion and an anticipated motion to dismiss. (ECF Nos. 11, 12). On May 22, 2023, the General Counsel filed the instant

motion to dismiss (ECF No. 16) and a response in opposition to the motion for preliminary injunction. (ECF No. 17). ABC Michigan has filed a reply brief on the preliminary injunction motion (ECF No. 19) and a response in opposition to the motion to dismiss (ECF No. 20). The Court heard argument on the motions in open court on July 19, 2023, and thereafter took them under advisement.

## LEGAL STANDARDS

The defense moves under Rule 12(b) to dismiss the complaint for failure to state a claim. It cites Rule 12(b)(1) in support of the first two bases for dismissal (lack of subject matter jurisdiction and standing). The Federal Rules provide that a claim may be dismissed for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). Federal courts are courts of limited jurisdiction and may exercise only those powers authorized by the United States Constitution and federal statutes enacted by Congress. Here, Plaintiffs have the burden of establishing subject matter jurisdiction in order to survive the defendant's Rule 12(b)(1) motion to dismiss. *Giesse v. Secretary of Dept. of Health and Human Services,* 522 F.3d 697, 702 (6th Cir.2008); *Madison–Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996).

## DISCUSSION

### 1. *The Court Lacks Subject Matter Jurisdiction*

The General Counsel claims that this Court lacks subject matter jurisdiction to hear this matter. The structure of the National Labor Relations Act, it says, gives the Board exclusive authority to prevent unfair labor practices, and it channels jurisdiction for reviewing final Board action to the courts of appeals. *See* 29 U.S.C §§ 160(e), (f); *see also Lexington Cartage Co. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Teamsters Loc*. 651, 713 F.2d 194, 195 (6th Cir. 1983) ("It has been well settled since *Myers v. Bethlehem Shipbuilding Corp.*,

6

303 U.S. 41 (1938), that the Board has been designated by Congress as the exclusive forum or original jurisdiction for adjudicating questions of representation or unfair practices in violation of the NLRA, and that the United States district Courts have no such jurisdiction."). ABC Michigan responds that the memorandum falls outside the structure of the NLRA, and thus it may bring this suit here in district court because the General Counsel acted in an *ultra vires* manner. The General Counsel has the better argument.

### A. Structure of the NLRA

The structure of the National Labor Relations Act does not support ABC Michigan's theory of subject matter jurisdiction. "The ultimate question is how best to understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim in question." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 143 S. Ct. 890, 900–01 (2023). "The General Counsel, of course, has the discretion to decide whether or not to issue a complaint." *Int'l Union of Operating Engineers, Loc. 150, AFL-CIO v. NLRB*, 325 F.3d 818, 830 (7th Cir. 2003) (citing *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 124-25 (1987)). The General Counsel "therefore possesses the lesser included authority to exercise exclusive control over the issues contained in any complaint that [s]he issues." *Id.* (citing § 3(d) of the NLRA, 29 U.S.C. § 153(d)). That provision of the NLRA states that the General Counsel "shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints . . . and in respect of the prosecution of such complaints before the Board[.]"). "Moreover, the General Counsel's decision not to issue a complaint, or to include a particular issue in a complaint, is final and unreviewable." *Int'l Union of Operating Engineers*, 325 F.3d at 830 (citing *United Food & Commercial Workers Union,* 484 U.S. at 126).

7

Put differently, the NLRA "makes no provision for review of the General Counsel's threshold determination concerning whether an unfair labor practice proceeding should be initiated, and the courts have uniformly held that such review is not available." § 3:1. *Provisions for Review and Enforcement*, FED. LAB. LAW: NLRB PRAC. § 3:1 (Feb. 2023 update). All this finds its roots in the case that the General Counsel principally relies on, *Meyers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938). *See, e.g.*, *Mayer v. Ordman*, 391 F.2d 889, 889 (6th Cir. 1968) (per curium) (citing cases, including *Meyers*, for the proposition that "[i]t is well settled that the National Labor Relations Act precludes District Court review of the manner in which the General Counsel of the Board investigates unfair labor practice charges and determines whether to issue a complaint thereon.")

### B.  *ABC Michigan's* Ultra Vires *Argument Fails.*

ABC Michigan seeks to sidestep the foregoing by arguing that all this comes into play when the General Counsel files a charge. But the memorandum in this case, it stays, is outside of the normal process of prosecuting actions before the NLRB and therefore, it contends is an *ultra vires* act that this Court can review. Under this view of the statute, the General Counsel serves as a prosecutor whose responsibilities include impartially investigating and prosecuting unfair labor practices under the NLRA, not issuing memoranda about the continued viability of NLRB precedent. Thus, ABC Michigan says, the General Counsel may be sued under the framework of *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682 (1949) and its holding that executive officers may be sued for actions "in conflict with the terms of [their] valid statutory authority." *Id.* at 695; *see also id.* at 689 ("[W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. . . . His actions are ultra vires his authority and therefore may be made the object of specific relief.").

The General Counsel's reply brief persuasively demonstrates, however, why the memorandum is not *ultra vires* based on the decision of *Leedom v. Kyne*, 358 U.S. 184 (1958). In that case, like in *Larson*, the Supreme Court held that "a litigant may bypass available administrative procedures where there is a readily observable usurpation of power not granted to the agency by Congress." *Detroit Newspaper Agency v. N.L.R.B.*, 286 F.3d 391, 397 (6th Cir. 2002) (discussing *Kyne*). Yet, for *Leedom v. Kyne* to apply "there must be both a showing that the Board acted in excess of its delegated power and that the aggrieved party would be 'wholly deprived' of its statutory rights." *Id.* (citing *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 43 (1991)). ABC Michigan has not made this showing.

With respect to the first prong of *Leedom v. Kyne*, ABC Michigan reads Section 3(d) of the NLRA too narrowly when claiming the General Counsel acted outside her statutory authority.[2] That section states, in relevant part, that the General Counsel "shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 160 of this title, and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law." ABC Michigan's reading, which would limit the duties of the General Counsel to investigating and prosecuting cases, ignores the "other duties" language of the section. Moreover, in issuing the memorandum the General Counsel made no effort to speak for the NLRB. To the contrary, she announced her desire to advocate to the Board for a change in controlling precedent. That is what advocates normally and routinely do, and what the General Counsel has done in public filings

---

[2] ABC Michigan maintains that *Larson* ought to apply because it deals with an officer, such as a General Counsel. *Kyne* involved allegedly unlawful action by the agency, that is, the Board itself. Neither side illuminates much of a distinction between the decisions for purposes of this case. The Court ultimately sees *Kyne* as applying *Larson*'s general framework to NLRA proceedings and Board action.

before the Board.  All the memorandum does is provide general notice and instructions to the Regional Officers on how the General Counsel sees the issue and how she plans to urge the Board to act.

Courts have acted cautiously in such circumstances.  *See, e.g.*, *Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 699 (D.C. Cir. 1971) ("There are sound reasons why . . . advisory letters and opinions should not be subject to judicial review.  This technique of apprising persons informally as to their rights and liabilities has been termed an 'excellent practice in administrative procedure.'" (quoting Commission on Organization of the Executive Branch of the Government, Task Force Report on Legal Services and Procedure 189 (1955)).  In the Court's view, all this means that the General Counsel plainly acted within her statutory authority to say she disagrees with NLRB precedent and is looking for a case to prosecute.  Contrary to ABC Michigan's argument, the General Counsel's statements are in fact an implicit recognition of the constraints of her statutory responsibilities—a recognition that the position will need to be advanced not through a memorandum, or through notice and comment, but rather through the normal NLRB channels, and ultimately Board action.  An *ultra vires* action, in contrast, would be to ignore the NLRA process and direct employers to refrain from captive audience meetings without first going through the prosecutorial process and obtaining a Board decision.  That is not what is alleged here, and thus, ABC Michigan has not met the first prong of the *Kyne* inquiry.

Nor has ABC Michigan met the second *Kyne* prong—that the plaintiff would be "wholly deprived" of its statutory rights without bypassing the available administrative procedures.  The Supreme Court has recently considered a case of district court subject matter jurisdiction over agency action in *Axon*, a case with "extraordinary claims" challenging the validity of SEC and FTC ALJs.  In holding that the plaintiff's claims did not first need to proceed through

10

administrative review processes, the Court emphasized the "here-and-now injury" of "being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon Enter., Inc.*, 143 S.Ct. at 893.  But ABC Michigan is not challenging the statutory structure of the NLRB.  In that regard, this case is similar to those the Court distinguished in *Axon*.  For instance, in *Elgin v. Department of Treasury*, the Court held the Civil Service Reform Act, and its provision requiring aggrieved covered employees to seek review in the Merit Systems Protection Board and then, if an adverse ruling issued, the Federal Circuit Court of Appeals, was the exclusive avenue to judicial review.  The plaintiffs in the case were former federal employees fired for failing to register for the draft.  They argued they should be able to obtain relief from the district court, and not through the statutory CSRA process, on the basis that the draft's exclusion of women violated the Equal Protection Clause.  In ruling against the plaintiff, the Supreme Court concluded that the Court of Appeals could review the challenge to the draft, and this ensured "meaningful review" of the plaintiff's claim.  *Elgin v. Dep't of Treasury*, 567 U.S. 1, 21 (2012).  Likewise here, in a particular case, an employer who is facing charges before the NLRB and who believes the General Counsel's position runs afoul of the First Amendment can defend on First Amendment grounds, if not at the NLRB, then at the Court of the Appeals.

Accordingly, ABC Michigan meets neither *Kyne* requirement to demonstrate subject matter jurisdiction.

### 2.  *ABC Michigan Lacks Standing in Any Event*

But even if ABC Michigan could establish subject matter jurisdiction, the Court concludes that the defense is also entitled to dismissal because ABC Michigan lacks Article III standing. ABC Michigan does not claim that it has itself has been harmed by the memorandum; rather, it claims that its members have been harmed, and thus it seeks to advance its claims through

associational standing. "This doctrine sometimes permits an entity to sue over injuries suffered by its members even when (as here) the entity itself alleges no personal injury." *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 537 (6th Cir. 2021).

To meet its burden for demonstrating it has associational standing, ABC Michigan must show "(1) the organization's members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organizations' purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of Tims Ford v. Tennessee Valley Auth.*, 585 F.3d 955, 967 (6th Cir. 2009) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (quotation marks omitted); *see also Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 537 (6th Cir. 2021) (articulating the same three element test). ABC Michigan fails to meet the first element.

"[I]t generally suffices" to meet the first element "for an association to demonstrate 'at least one of [its] members would have standing to sue on his own.'" *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018) (quoting *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 554, 554-55 (1996). So, to demonstrate the first element of associational standing, an association typically must "allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). ABC Michigan has not identified a member of its organization that it claims would have standing to sue in its own right. But ABC Michigan says it need not do so because, based on the declaration of Mr. Greene, all of its members have been harmed by the General Counsel's memorandum.

ABC Michigan's theory of standing here is at its most tenuous with more recent cases like *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) and *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) that emphasize the standing requirements of concrete injury and redressability. *See Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 537-542 (discussing cases including *TransUnion LLC* and *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) and noting that the associational standing test and recent Supreme Court decisions "are not obviously reconcilable."). The Court is not aware of a binding case that rejects ABC Michigan's broad view of associational standing based on new statutory developments.[3] But, for the reasons that follow, the Court concludes that the factual allegations in ABC Michigan's Complaint fails to assert a *Twombly* plausible claim of standing under the theory it advances.

Even if ABC Michigan can still proceed by simply asserting all its members have been injured, it still must plead facts sufficient to establish that these members have suffered, or been threatened with, a concrete and particularized injury from the General Counsel's conduct. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State Inc.*, 454 U.S. 464, 487 n.23 (1982). "And the organization must show that its requested relief will redress this injury." *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 543 (citing *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 257-58 (6th Cir. 2018); *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 970-71 (6th Cir. 2009). ABC Michigan's assertion on standing fails to meet these requirements. Indeed, the allegations are vague and conclusory. ABC Michigan depends mostly on pages 18 through 19 of the Complaint which parallel the declaration of its President, Mr. Greene. ABC Michigan asserts that

---

[3] *But see Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 539 (noting that "[a]ssociational standing . . . may be nothing more than an outdated relic[.]").

its members are on notice of the memorandum, that the members' interpretation of the memorandum is that it is intended as a threat, and that "[b]ut for Abruzzo's threat of prosecution in her public Memorandum by inserting herself into the discussion, ABC Michigan employer members would engage in lawful free speech[.]"  (Compl. ¶¶ 93-97, ECF No. 1, PageID.18-19).

But none of this identifies a sufficient concrete injury or threat.  Indeed, during oral argument on the motions, counsel for ABC Michigan could not meaningfully distinguish the alleged harm caused by the memorandum from the public brief the General Counsel subsequently filed in the NLRB proceeding—a filing ABC Michigan concedes was lawful.  Threatened prosecution may certainly qualify as an injury, but that "injury must be *certainly impending* to constitute injury in fact."  *See Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 545.  And "a plaintiff claiming that a government agency might bring an enforcement action against the plaintiff usually must show a 'credible threat of prosecution' under the challenged law or regulation to establish that this type of enforcement action is certainly impending."  *Id.* (citing *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016).  There are no facts pleaded to suggest that is the case here.  There are no facts to suggest that there are any ongoing unionization efforts at an ABC Michigan member employer, or that any union or employee might seek to bring or advance a charge.  The memorandum has no legal force and, unlike instances where the decisive entity itself issues such a threat, *see Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012) (warning letter sent to attorney from State bar), the memorandum in this case was not sent from such an entity and was not targeted to any of ABC Michigan's employers or members.  Thus, like in *Ass'n of Am. Physicians*, ABC Michigan merely speculates that its members face a greater likelihood of prosecution or union complaints with the General Counsel's memorandum publicly available than they would without the memorandum.  There is nothing here to suggest that is the case.

14

In a similar vein, ABC Michigan fails to demonstrate redressability, that is, that the requested relief will address the injury or place ABC Michigan and its members in any different position. The relief ABC Michigan seeks is an injunctive order that 1) stops the General Counsel "from threatening to prosecute employers in her Memorandum on the Board's public website;" and (2) orders the General Counsel to "retract, delete, and remove her Memorandum from the Board's public website." (ECF No. 1, PageID.28). ABC Michigan has not plausibly alleged how the memorandum (one that admittedly has no legal force) chills its members any more than a brief in an existing case that takes the same position as the memorandum and urges the Board to overturn its precedent. A conclusory assertion on the point is no substitute for articulation of a plausible factual predicate to support the conclusion.

## CONCLUSION

For all these reasons, the Court concludes that it lacks subject matter jurisdiction over this matter and that ABC Michigan lacks standing in any event. For this reason, the Court need not reach the General Counsel's alternate argument that ABC Michigan has failed to state a claim upon which relief can be granted with respect to the four counts alleged.

**ACCORDINGLY, IT IS ORDERED** that Defendant Abruzzo's Motion to Dismiss (ECF No. 16) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction (ECF No. 5) is **DISMISSED AS MOOT.**

A separate Judgment shall issue.

Dated:   July 31, 2023                         /s/ Robert J. Jonker
                                               ROBERT J. JONKER
                                               UNITED STATES DISTRICT JUDGE